**Danny E. BEAUCLAIR, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

**Civil Action No. 05–3224–CM.**

United States District Court, D. Kansas.

Sept. 20, 2006.

Danny E. Beauclair, Lansing, KS, pro se.

Jackie A. Rapstine, Office of United States Attorney, Topeka, KS, for Defendant.

### ORDER

MURGUIA, District Judge.

This social security appeal is before the court on the magistrate judge's Report and Recommendation to reverse and remand the Commissioner's denial of benefits. Both plaintiff, who proceeds *pro se,*

and defendant timely objected to the Report and Recommendation (Doc. 24). The facts and law are accurately set forth in the Report and Recommendation, and the court will not repeat them here. In reviewing a magistrate judge's Report and Recommendation, the district court makes a *"de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). In its review, the court must "consider relevant evidence of record and not merely review the magistrate judge's recommendation." *In re Griego,* 64 F.3d 580, 584 (10th Cir.1995). The court has reviewed the record in accordance with this standard, and overrules both plaintiff's and defendant's objections.

## I. Plaintiff's Objections

Plaintiff makes numerous objections to the magistrate judge's findings, most of which are conclusory. Nevertheless, because plaintiff proceeds *pro se,* the court construes his pleadings liberally. *See Hill v. Oklahoma,* 18 Fed.Appx. 768, 769 (10th Cir.2001) (quoting *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991)). The court will address each of plaintiff's objections individually.

### A. New Evidence

Plaintiff argues that new evidence shows that he is disabled. Significantly, plaintiff does not specify how his new evidence supports this conclusion. After reviewing plaintiff's new evidence and reviewing the standards for submission of new evidence, *see Heimerman v. Chater,* 939 F.Supp. 832, 833–34 (D.Kan.1996) (citations omit-

ted), the court agrees with the magistrate judge's findings that (1) plaintiff's new evidence is not "new" or material, and (2) plaintiff did not show good cause for his failure to obtain and present this evidence prior to this stage in the proceedings. Plaintiff's objection is overruled.[1]

### B. Severity of Symptoms

Plaintiff contends that the severity of his symptoms, taken as a whole, show that he is disabled. Again, plaintiff did not elaborate on this broad argument, or articulate which specific findings he opposes. The court views this as a dual argument: plaintiff opposes findings regarding (1) his impairments and (2) his credibility. The court notes that the magistrate judge found error requiring remand in both of these areas of analysis.

### 1. Findings Regarding Plaintiff's Impairments

With respect to plaintiff's impairments, the magistrate judge found that the ALJ erred in not discussing plaintiff's diagnosis of irritable bowel syndrome ("IBS") when determining whether plaintiff's impairments are "severe" in step two of the sequential evaluation process. *See* 20 C.F.R. § 404.1521; *Hinkle v. Apfel,* 132 F.3d 1349, 1352 (10th Cir.1997). In other words, the magistrate judge ruled in plaintiff's favor on this issue. Plaintiff's objection is therefore moot with respect to IBS. After reviewing the record and the applicable standards, however, the court finds that substantial evidence in the record supports the magistrate judge's findings that plaintiff's other alleged impairments— herniated nucleus pulposus and myofascial

---

1. Similarly, plaintiff also argues that, due to the fact that he is in prison, he was unable to get many of his medical records in a timely manner. The court is unsure which medical records plaintiff is referring to. As discussed above, the court finds that the magistrate judge thoroughly analyzed plaintiff's new evidence and adopts the findings of the magistrate judge.

pain syndrome—are not "severe." The court overrules plaintiff's objection as to this argument.

### 2. Findings Regarding Plaintiff's Credibility

With respect to plaintiff's credibility, the magistrate judge found that one reason relied on by the ALJ in finding that plaintiff is not credible—that plaintiff demonstrates an inadequate number of "trigger points"—is not supported by substantial evidence in the record. Therefore, with regard to this finding, plaintiff's objection is moot. But the magistrate judge also found that the ALJ properly supported his finding that plaintiff is not credible with additional findings and evidence, including:

> (1) plaintiff's spotty earnings record; (2) plaintiff's activities of daily living before his incarceration are not commensurate with disability; (3) the record shows his depression and anxiety were due in large part to the fact he was facing imprisonment; (4) he was noted as hypochondriacal; ... (6) his x-rays were generally negative; (7) he was taking no mediation for his medical condition at the time of the hearing; and (8) the objective medical records do not support the extent of symptoms alleged.

Report and Recommendation (Doc. 24), at 33.

Plaintiff also argues that the ALJ did not address the fact that while he was self-employed from 1991 through 2000, plaintiff never worked a forty-hour work week. Therefore, plaintiff contends that he cannot "fulfill the requirements for 'engaging in substantial gainful activity for a continuous period of at lest [sic] twelve months.'" Plaintiff is mistaken about the requirements for disability benefits. Moreover, the fact that plaintiff did not work full-time does not indicate that plaintiff was unable to work full-time.

Also pertinent to the court's credibility determination is plaintiff's argument that the court must have confused plaintiff's income figures for plaintiff's net income (as opposed to gross income) for the years in which plaintiff was self-employed, because, plaintiff contends, his gross income in 1999 was $50,000 and similar in previous years. The court believes that plaintiff is opposing the ALJ's and magistrate judge's "spotty income figures" finding. But this argument further weakens plaintiff's credibility. On April 13, 2000, plaintiff signed his application for disability insurance benefits and affirmed that it was true. See R. at 59–61. Within that application is plaintiff's statement that his "earnings record is correct as posted." Id. at 60. Plaintiff's earnings record, dated March 15, 2003, includes plaintiff's total yearly incomes as follows:

| Year | Total Yearly Income |
| --- | --- |
| 1990 | $ 6,664.02 |
| 1991 | $12,004.07 |
| 1992 | $ 2,006.10 |
| 1993 | $ 5,291 |
| 1994 | $ 8,787 |
| 1995 | $ 4,852 |
| 1996 | $ 4,052 |
| 1997 | $ 4,853 |
| 1998 | $ 942 |
| 1999 | $17,017 |

Id. at 66. Plaintiff's allegation that he earned $50,000 gross income in 1999 is either disingenuous, or an admission that his disability application earnings figures are inaccurate.

The court has reviewed each of the reasons the ALJ relied on in finding that plaintiff is not credible, and has also reviewed the applicable standards. In so

doing, the court finds that there is substantial evidence in the record to support the ALJ's finding that plaintiff is not credible. Plaintiff's objection on this point is overruled.

## C. CUNA Disability Documentation

Plaintiff contends that the CUNA Medical Group disability documentation demonstrates that plaintiff is disabled and unable to return to work. The magistrate judge, however, found that "[t]he CUNA disability documentation merely states the conclusory opinion that plaintiff is 'disabled' and has not been released to return to work. The documentation does not provide any medical evidence upon which the conclusion is based and, therefore, would not change the Commissioner's opinion." Report and Recommendation (Doc. 24), at 10–11 (citation omitted). After reviewing the record and the applicable standards, the court agrees. Plaintiff's objection is overruled.

## D. Discussion of Line–Striper Job Duties

Plaintiff argues the magistrate judge erred when he failed to discuss the actual job duties required of plaintiff's former job as a line-striper. Plaintiff later adds that his work as a line-striper was sedentary work. But the ALJ found, and the magistrate judge did not dispute, that plaintiff is incapable of performing his previous work as a line-striper. Plaintiff's argument is misplaced.

## E. Fibromyalgia Finding

Plaintiff seems to oppose the ALJ's findings regarding plaintiff's fibromyalgia. Plaintiff states that since the ALJ found that plaintiff suffers from fibromyalgia, "then they must take what [fibromyalgia] really is dealing with[:] the [central nervous system] and amplified pain, and its

other symptoms that can be severe." Doc. 25, at 3. As an example, plaintiff points to the interaction between his fibromyalgia and his alleged herniated nucleus pulposus. The court's response to this argument is three-fold. First, the pain associated with plaintiff's fibromyalgia is largely subjective, and this court has found that plaintiff's claims of disability are not credible. Second, in support of his argument, plaintiff points only to medical literature; plaintiff does not offer any medical source opinions demonstrating the effect of these conditions on plaintiff. With regard to the large quantity of general medical literature submitted by plaintiff, the magistrate judge held:

> the general information proffered is not material to the decision because it does not present a reasonable possibility of changing the decision. That information does not relate to plaintiff's condition individually, and is merely general medical information regarding plaintiff's impairments. The court finds that the evidence proffered with plaintiff's briefs does not meet the criteria to justify remand, and may not be considered by the court in its review of the final decision of the Commissioner.

Report and Recommendation (Doc. 24), at 13. The court agrees, and adopts the magistrate judge's opinion regarding plaintiff's general medical literature. Third, the court agrees with the magistrate judge's finding that plaintiff's alleged herniated nucleus pulposus is not an impairment. Specifically, the magistrate judge rejected plaintiff's evidence in support of his alleged herniated nucleus pulposus diagnosis—a July 19, 1994 MRI which concluded that plaintiff had a "Small central HNP L4–5 level," (R., at 597)—because "plaintiff worked for at least five years after the diagnosis at issue, and plaintiff points to no evidence of worsening of this

condition. Therefore, the evidence does not establish that this condition is disabling." Report and Recommendation (Doc. 24), at 25. The court finds that there is substantial evidence in the record to support this finding, and overrules plaintiff's objection on this point.

## F. Plaintiff's Ability to Work

Plaintiff asserts that the ALJ never addressed plaintiff's contention that "there was [sic] weeks I could only leave home to work for just a few times, and even those times was [sic] only for a few hours, and some times [sic] not that long." Doc. 25, at 3. Plaintiff points to Dr. Franz's August 18, 2003 letter in support of this argument. But the magistrate judge thoroughly analyzed Dr. Franz's letter and found that Dr. Franz opined that plaintiff was unable to work at his previous line-striping business, but did not state that plaintiff could not do any work. After reviewing the letter and the applicable standards, the court adopts the magistrate judge's findings on this issue. Plaintiff's objection on this point is overruled.

## G. Plaintiff's Trigger Points for Myofascial Pain Syndrome

Finally, plaintiff argues that the court found that "plaintiff did not [sic] have Trigger points for having [myofascial pain syndrome]" and points to a medical record from Dr. Franz, which plaintiff contends states that trigger points in his feet indicate plaintiff has myofascial pain syndrome, not fibromyalgia. The court also rejects this argument for several reasons. First, after reviewing Dr. Franz's medical record, the court is unconvinced that Dr. Franz diagnosed plaintiff with myofascial pain syndrome. Second, the medical records were written on May 24, May 31 and June 14, 1989—over ten years prior to the date on which plaintiff alleges he became disabled. Third, the record is replete

with records from Dr. Franz, none of which indicate that plaintiff suffers from myofascial pain syndrome. Fourth, the magistrate judge found, and this court has concurred, that plaintiff's allegations of disabling symptoms are not credible. After reviewing the magistrate judge's analysis, the record, and the applicable standards, the court finds that there is substantial evidence in the record to support the magistrate judge's conclusion. Plaintiff's objection is overruled.

## II. Defendant's Objections

Defendant objects to both of the magistrate judge's bases for remanding the case. First, defendant argues that although the ALJ did not discuss whether plaintiff's IBS was a severe impairment, this was not error because (1) there is no evidence that plaintiff's IBS was severe, and (2) none of plaintiff's doctors found that plaintiff was limited by his IBS condition. Defendant cites a Sixth Circuit case for the proposition that a non-severe finding such as this one is harmless if other severe impairments are found. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir.1987). As the magistrate judge pointed out, however, this court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Report and Recommendation (Doc. 24), at 4 (quoting *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir.2001) (quoting *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 800 (10th Cir.1991))). The court will not decide whether plaintiff's IBS is a severe impairment or how plaintiff's IBS affects his residual functional capacity assessment; that decision rests with the Commissioner. Defendant's first objection is overruled.

Defendant also argues that the magistrate judge erred in recommending remand on the issue of plaintiff's trigger

points because it is irrelevant whether plaintiff has four or eight trigger points when a definite diagnosis of fibromyalgia requires a minimum of eleven trigger points. The magistrate judge based his reasoning on the fact that,

> [e]leven positive "tender points" out of eighteen fixed locations on the body are generally considered necessary to a definitive diagnosis of fibromyalgia. *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir.1996). As the ALJ noted, four positive "tender points" would support a finding of a "minimal number of positive 'tender points.'" It is less clear that eight positive "tender points" would be a "minimal" number compared to the eleven positive "tender points" necessary. Because the ALJ considered but one-half of the "tender points" found by Dr. Perkins, the court is unable to know whether the ALJ would find a minimal number of "tender points" if he were aware of the correct number.

Report and Recommendation (Doc. 24), at 37. Because the court is unsure of the weight the ALJ would give the correct information on review, defendant's second objection is overruled.

**IT IS THEREFORE ORDERED** that plaintiff's Objection/Appeal to Courts [sic] "Report and Recommendation" (Doc. 25) and Objection of Jo Anne B. Barnhart, Commissioner of Social Security, Under Fed.R.Civ.P. 72 to March 17, 2006 "Report and Recommendation" (Doc. 26) are overruled. In accordance with the magistrate judge's Report and Recommendation, the decision of the ALJ is reversed and the case is remanded for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g).

## REPORT AND RECOMMENDATION

REID, United States Magistrate Judge.

Plaintiff is a *pro se* prisoner in the custody of the Kansas Department of Correc-

tions seeking review of a final decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits under sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). The matter has been referred to this court for a report and recommendation. The court recommends the Commissioner's decision be REVERSED and the case be REMANDED pursuant to the fourth sentence of 42 U.S.C. § 405(g).

## I. Background

Plaintiff's application for disability insurance benefits was denied initially and upon reconsideration. (R. 18, 32, 33). Plaintiff sought and, on July 9, 2003, was given a hearing before an Administrative Law Judge (ALJ). (R. 18, 48–49, 790–829). Plaintiff appeared by telephone and was represented by his mother, Rosella F. Reece, who also appeared telephonically. (R. 18, 792–95). Testimony was taken from plaintiff; his spouse, Della Beauclair; and a vocational expert. (R. 18, 791, 792). The ALJ issued a decision Aug. 5, 2003 in which he found that plaintiff is unable to perform any of his past relevant work but is able to perform other jobs existing in significant numbers in the economy. (R. 18–25). Consequently, he found that plaintiff is not "disabled" within the meaning of the Act, and denied plaintiff's application. (R. 24–25).

Plaintiff sought review by the Appeals Council and submitted over four hundred pages of additional evidence including multiple letters and argument from plaintiff, literature regarding plaintiff's various medical conditions, progress notes from Dr. Shahour, a "Medical Classification Report" from Dr. Stanton, and letters from plaintiff's treating physician, Dr. Mary

Franz, and his treating social worker, Mr. Brent Cain. (R. 6–7, 14, 382–789). The Appeals Council issued an order in which it accepted all of the evidence and made it a part of the administrative record. (R. 12–13).

The Appeals Council considered plaintiff's arguments and the additional evidence submitted and found no reason under the rules to review the ALJ's decision. (R. 8–11). Therefore, it denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review. (R. 8); *Threet v. Barnhart*, 353 F.3d 1185, 1187 (10th Cir.2003). Plaintiff now seeks judicial review.

## II. Legal Standard

The court's review is guided by the Act. 42 U.S.C. § 405(g). Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir.2001). Substantial evidence is more than a scintilla, but less than a preponderance, it is such evidence as a reasonable mind might accept to support the conclusion. *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [it's] judgment for that of the agency." *White*, 287 F.3d at 905 (quoting *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 800 (10th Cir.1991)). The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. *Gossett*, 862 F.2d at 804–05; *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir.1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d). The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy. *Id.*

The Commissioner has established a five-step sequential process to evaluate whether a claimant is disabled. 20 C.F.R. § 404.1520 (2003); *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir.2004); *Ray*, 865 F.2d at 224. "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has severe impairments, and whether the severity of his impairments meets or equals the Listing of Impairments. *Id.* at 750–51. The Commissioner next assesses claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520 (2004).[1] This assessment is used at both step four and step five of the process. *Id.*

---

1. The regulation cited became effective on September 25, 2003, after the ALJ's decision. But, it merely clarifies the agency's longstanding interpretation of its rules that RFC is assessed only once. 68 Fed.Reg. 51153, 51154 (Aug. 26, 2003).

■ After assessing claimant's RFC, the Commissioner evaluates steps four and five—whether the claimant can perform his past relevant work, and whether he is able to perform other work in the national economy. *Williams*, 844 F.2d at 751. In steps one through four the burden is on plaintiff to prove a disability that prevents performance of past relevant work. *Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir.2001); *Williams*, 844 F.2d at 751 n. 2. At step five, the burden shifts to the Commissioner to show other jobs in the national economy within plaintiff's capacity. *Id.; Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir.1999).

Plaintiff has presented thirty-nine pages of argument and fifty-seven pages of evidence in this court in support of his allegations of error in the Commissioner's decision. (Docs.11, 12, 17). A *pro se* plaintiff's pleadings are to be construed liberally and are held to a less stringent standard than pleadings drafted by lawyers. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991)(citing *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). The court will recognize and consider a *pro se* plaintiff's claims despite any failure to cite proper legal authority, confusion of various legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *Id.* But, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.* Therefore, the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues," *Drake v. City of Ft. Collins*, 927 F.2d 1156, 1159 (10th Cir.1991); or "supply additional factual allegations to round out plaintiff's complaint or construct legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir.1997).

Construing plaintiff's pleadings liberally, the court perceives numerous claims of error. Plaintiff claims the ALJ erred in weighing the medical opinions of Dr. Franz, Dr. Frieman, and Mr. Cain; erred in failing to properly consider impairments of herniated nucleus pulposus, myofacial pain syndrome, and irritable bowel syndrome (IBS); and erred in evaluating the credibility of plaintiff's allegations of symptoms.

### III. New Evidence

Because plaintiff submitted evidence to this court which is not contained in the administrative record, the court must determine whether it may consider the "new" evidence, must remand for the Commissioner to consider the evidence in the first instance, or must not consider the "new" evidence in reviewing the Commissioner's final decision.

■ Pursuant to the jurisdiction conferred upon the court by the Act, the court may enter judgment based only upon the pleadings and the record of the proceedings before the Commissioner. 42 U.S.C. § 405(g). Alternatively, "it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.* The court may not consider "new" evidence offered for the first time to this court in its review except to determine whether remand is necessary for the Commissioner to consider the new evidence. *Selman v. Califano*, 619 F.2d 881, 885 (10th Cir.1980); *Bradley v. Califano*, 573 F.2d 28, 30 (10th Cir.1978). Therefore, the court must decide whether remand is required for the Commissioner

to consider the "new" evidence presented in this court.[2]

■ This court has recognized three criteria in evaluating whether to remand for consideration of new evidence:

> For a remand to be appropriate when good cause is shown, it must be determined "that the new evidence would have changed the Secretary's decision had it been before him." *Hargis v. Sullivan,* 945 F.2d 1482, 1493 (10th Cir. 1991). Implicit in the materiality requirement is that "the proffered evidence relate to the time period for which the benefits were denied." *Hargis v. Sullivan,* 945 F.2d 1482, 1493 (10th Cir. 1991). *See also Szubak v. Secretary of Health and Human Services,* 745 F.2d 831, 833 (3rd Cir.1984) (new evidence may not relate to a "later-acquired disability" or "the subsequent deterioration of the previously nondisabling condition"). The requirements for introduction of additional evidence may be summarized as follows: (1) the proffered evidence must be "new" and not merely cumulative of what is already in the record; (2) the proffered evidence must be material, that is, relating to the time period for which benefits were denied, and offering a reasonable possibility of changing the Secretary's decision; and (3) the claimant must show good cause for the failure to obtain and present the evidence at the prior hearing. *Tirado v. Bowen,* 842 F.2d 595, 597 (2nd Cir.1988).

*Heimerman v. Chater,* 939 F.Supp. 832, 833–34 (D.Kan.1996)

The court finds that none of the "new" evidence proffered in this court satisfies the criteria for remand to consider new evidence. The court finds either the evidence is not "new," it is not material, or plaintiff has not shown good cause for the failure to obtain and present it to the ALJ or the Appeals Council.

### A. Evidence Not Material to the Decision

Some of the evidence proffered is not material to the decision because it does not relate to the time period at issue. Plaintiff sought disability insurance benefits, alleging he became unable to work on Jan. 1, 2000. (R. 19, 59). The ALJ rendered his decision on Aug. 5, 2003. (R. 25). Therefore, the question before the ALJ (and the question to which the court's review is limited) is whether plaintiff was disabled between the alleged disability date and the date of the ALJ's decision.

■ The evidence which is not material to the decision because it does not relate to the time period at issue consists of: Dr. Radadiya's opinions dated Dec. 4, 2003, and Jan. 6 and 21, 2004 (Doc. 11, Attach.1, pp. 21, 29); (Doc. 17, Attach.1, pp. 1–2); the Kansas University Medical Center records attached to plaintiff's "Response" and dated Dec. 4, 2003 (Doc. 17, Attach.1, pp. 3–4); and Nadine K. Belk's memorandum dated Apr. 6, 2005. (Doc. 17, Attach.1, p. 10). Each of these documents is dated after Aug. 5, 2003 and relates to plaintiff's condition after the period at issue. They are not material to the decision at issue and will not be considered by this court. If plaintiff believes his condition worsened after the ALJ hearing, he may initiate a new claim for benefits with the Commissioner. *Robinson v. Apfel,* 172 F.3d 63 (10th Cir.1999).

---

**2.** The court notes that the evidence presented to the Appeals Council (R. 382–789) was made a part of the administrative record by the Council (R. 12–13) and will be considered in the court's review of the final decision of the Commissioner. *O'Dell v. Shalala,* 44 F.3d 855, 859 (10th Cir.1994).

Other evidence is not material to the decision at issue because it does not afford a reasonable possibility of changing the Commissioner's decision. Such evidence consists of the CUNA Mutual Group disability documentation (Doc. 11, Attach.1, pp. 23, 24) and Dr. Franz's second opinion letter dated June 15, 2005. (Doc. 17, Attach.1, p. 11). The CUNA disability documentation merely states the conclusory opinion that plaintiff is "disabled" and has not been released to return to work. (Doc. 11, Attach.1, p. 24). The documentation does not provide any medical evidence upon which the conclusion is based and, therefore, would not change the Commissioner's opinion. Moreover, the documentation is cumulative of Dr. Franz's first opinion letter dated Aug. 18, 2003. (R. 787–88).

■ Plaintiff proffered a second opinion letter authored by Dr. Franz, in which Dr. Franz opined that plaintiff was "unable to perform any duties requiring manual labor. . . . He did not have any clerical skills that I am aware of and was therefore unable to be gainfully employed in a clerical position." (Doc. 17, Attach.1, p. 11). The ALJ found that plaintiff has the RFC for a restricted range of light work. (R. 25). The vocational expert testified that a person with plaintiff's capabilities would be able to perform certain representative jobs which are unskilled, sedentary, and not clerical. (R. 24, 827). Because Dr. Fanz's second opinion letter addresses only manual labor or skilled clerical work and does not address unskilled light or sedentary work, it is not inconsistent with either the ALJ's RFC assessment or the vocational expert's testimony. Therefore, the opinion does not have a reasonable possibility of changing the decision and, as such, is not material to the decision at issue. Moreover, the second letter is cumulative of Dr. Franz's first opinion letter which is a part of the record. (R. 787–88).

### B. Evidence Which Is Not "New"

■ Much of the evidence proffered with plaintiff's briefs was in existence at the time of the ALJ hearing, but plaintiff does not show good cause for the failure to obtain and present the evidence at the ALJ hearing or to the Appeals Council.[3] This evidence includes a CT scan dated May 9, 1982 (Doc. 11, Attach.1, p. 22), an ultrasound report dated Aug. 6, 1991 (Doc. 11, Attach.1, p. 25), numerous progress notes from Dr. Franz (Doc. 11, Attach. 2, pp. 6 & 20–30), a physical therapy progress note (Doc. 11, Attach.2, p. 8), an operation report (Doc. 11, Attach.2, p. 9), an emergency room report (Doc. 11, Attach.2, p. 10), and numerous pages of information copied from books, pamphlets, brochures, or web sites. (Doc. 11, Attach. 2, pp. 7 & 12–19); (Doc. 12, Attach.1, pp. 1–6); and (Doc. 17, Attach.1, pp. 5–9). Plaintiff makes no attempt to establish that he was unable through no fault of his own to procure this evidence and present it to the ALJ or the Appeals Council.

3. In connection with this evidence, plaintiff complains that the ALJ apparently thinks that plaintiff's medical problems began around 1999. Plaintiff's argument misunderstands the nature of Social Security disability consideration. The regulations provide in general that the Commissioner will develop plaintiff's complete medical history for at least the twelve months preceding the month in which claimant filed his application. 20 C.F.R. 404.1512(d) (2003). Plaintiff filed his application on Apr. 13, 2000. (R. 61). Therefore, the record secured by the Agency appears to begin in 1999. Because plaintiff worked in 1999 and does not allege disability during that time, the record and the ALJ's decision focus on evidence regarding the alleged development of disability on or shortly before Jan. 1, 2000.

Further, the court notes that the general information proffered is not material to the decision because it does not present a reasonable possibility of changing the decision. That information does not relate to plaintiff's condition individually, and is merely general medical information regarding plaintiff's impairments. The court finds that the evidence proffered with plaintiff's briefs does not meet the criteria to justify remand, and may not be considered by the court in its review of the final decision of the Commissioner.

Some of the evidence proffered with plaintiff's briefs, however, also appears in the record and has been considered by the court in its review of the decision. (Doc. 11, Attach. 1, pp. 26–28, 30; Attach. 2, pp. 1–5). Moreover, in addition to the briefs themselves, the court has considered plaintiff's argument contained in attachments to his briefs. (Doc. 11, Attach.1, pp. 1–20, Attach.2, p. 11).

## IV. Opinions of Medical Sources

Plaintiff makes arguments regarding the opinions of his treating social worker, Mr. Cain, LSCSW; a psychologist who evaluated him, Dr. Frieman, Ph.D.; and his treating physician, Dr. Franz, M.D. Plaintiff argues, variously, that the opinions of treating physicians should be given controlling weight, that Mr. Cain's opinion should be accepted as that of an "acceptable medical source," and that Dr. Frieman's opinion is supportive of plaintiff's allegation of disability because the psychologist recommended that plaintiff be referred for consideration of SSDI. The Commissioner argues that the evidence has been considered, the ALJ properly evaluated the evidence, and the Appeals Council found that the evidence submitted to it does not provide a basis to change the ALJ's decision.

### A. Standard for Evaluating Medical Source Opinions

"Medical opinions" are defined as "statements from physicians and psychologists or other *acceptable medical sources* that reflect judgments about the nature and severity of [plaintiff's] impairment(s), including [plaintiff's] symptoms, diagnosis and prognosis, what [plaintiff] can still do despite impairment(s), and [plaintiff's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2) (emphasis added). Plaintiff's own physician, psychologist, or other "acceptable medical source" is considered a "treating source." *Id.* § 404.1502. "Acceptable medical sources" as defined in the regulations include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. *Id.,* § 404.1513(a)(2). The regulations provide that the Commissioner may use evidence from "other medical sources" such as nurse-practitioners, physician's assistants, naturopaths, chiropractors, audiologists, and therapists, not on the list of "acceptable medical sources" to show the severity of plaintiff's impairments and how they affect his ability to work. 20 C.F.R. § 404.1513(d). Because "other medical sources" are not "acceptable medical sources," they do not meet the definition of "treating sources," and their opinions do not qualify as "medical opinions."

"Medical opinions" may not be ignored and will be evaluated by the Commissioner in accordance with factors contained in the regulations. *Id.* § 404.1527(d); Soc. Sec. Ruling (SSR) 96–5p, West's Soc. Sec. Reporting Serv., Rulings 123–24 (Supp.2005). A physician who has treated a patient frequently over an extended period of time is expected to have greater insight into the patient's medical condition. *Doyal v. Barnhart,* 331 F.3d 758, 762 (10th Cir.

2003). But, "the opinion of an examining physician who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." *Id.* at 763 (citing *Reid v. Chater*, 71 F.3d 372, 374 (10th Cir.1995)). However, opinions of examining physicians are generally given more weight than the opinions of physicians who have merely reviewed the medical record. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004); *Talbot v. Heckler*, 814 F.2d 1456, 1463 (10th Cir.1987) (citing *Broadbent v. Harris*, 698 F.2d 407, 412 (10th Cir.1983), *Whitney v. Schweiker*, 695 F.2d 784, 789 (7th Cir.1982), and *Wier ex rel. Wier v. Heckler*, 734 F.2d 955, 963 (3d Cir.1984)).

■ "If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not inconsistent with the other substantial evidence in [plaintiff's] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. § 404.1527(d)(2); *see also*, SSR 96–2p, West's Soc. Sec. Reporting Serv., Rulings 111–15 (Supp.2005). If the treating source opinion is not given controlling weight, the inquiry does not end. *Watkins v. Barnhart*, 350 F.3d 1297, 1300–01 (10th Cir.2003). A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Id.* Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Id.* at 1301; 20 C.F.R. § 404.1527(d)(2–6); *see also Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing *Goatcher v. Dep't of Health & Human Serv.*, 52 F.3d 288, 290 (10th Cir. 1995)).

■ Considering the factors, the Commissioner must give reasons for the weight given a treating source opinion. *Id.* 350 F.3d at 1301. "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so." *Id.* (citing *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir.1996)) (quoting *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir.1987)).

### B. The Commissioner's Decision

The ALJ had Dr. Frieman's report, one of Mr. Cain's letters, and Dr. Franz's treatment notes before him. (R. 200–25, 239–42, 338–47, 348–50, 352–53, 354–58). In the decision, he discussed Dr. Frieman's report (R. 20) and Dr. Franz's treatment of plaintiff. (R. 21–22). Dr. Franz's first opinion letter was written after the hearing, was not before the ALJ and was, therefore, not considered by the ALJ. The Appeals Council, however, discussed Dr. Franz's opinion letter:

> Although she stated that you were unable to perform the duties of your line-painting business secondary to your pain-related fibromyalgia, she did not indicate that you were disabled and incapable of performing any substantial gainful activity.

(R. 9). The Appeals Council found in Dr. Franz's opinion no basis to change the ALJ's decision. *Id.*

### C. Analysis

■ The court finds substantial evidence in the record to support the Commissioner's findings regarding medical source opinions. First, Mr. Cain is a social worker, not a physician or psychologist. (R. 353)(signing letter as LSCSW). As such, contrary to plaintiff's argument, Mr. Cain is not an "acceptable medical source" nor a "treating source" as defined in the regulations, but is an "other medical source" whose opinion is not evaluated as a "medical opinion."

Mr. Cain stated that he had been treating plaintiff "in individual therapy," and opined that plaintiff has a very severe case of fibromyalgia, which causes constant pain, hypersensitivity to environmental stimuli, and a need for special accommodation in relation to walking, physical activity, and labor. (R. 352). As a social worker, Mr. Cain is primarily concerned with treating plaintiff's mental condition and does not have the expertise to give an opinion regarding plaintiff's physical capabilities or limitations resulting from fybromyalgia.

In a second letter presented to the Appeals Council, Mr. Cain noted that plaintiff had major depression and "a serious case of fibromyalgia," that plaintiff suffered significantly, particularly from the fibromyalgia, and that Mr. Cain did not believe that plaintiff suffered from hypochondriasis. (R. 789). This letter merely states the social worker's opinion regarding what impairments plaintiff has but does not contain any opinion regarding plaintiff's limitations or restrictions resulting from those impairments. There is nothing in Mr. Cain's opinions regarding plaintiff's mental impairments which is inconsistent with the ALJ's findings regarding RFC,[4] and Mr. Cain is not qualified to assess plaintiff's limitations resulting from fibromyalgia or other physical impairments. Therefore, the ALJ did not err in failing to give weight to Mr. Cain's opinion.

Dr. Frieman made four recommendations: (1) that plaintiff be referred for treatment as a sexual offender, (2) that plaintiff not be given visitation rights for his children, (3) that plaintiff be referred for consideration for SSDI, and (4) that plaintiff be referred for treatment of IBS and fibromyalgia. (R. 242). She gave no opinion regarding the nature and severity of plaintiff's physical impairment, and no opinion regarding work restrictions resulting from plaintiff's mental or physical impairments. None of Dr. Frieman's opinions is inconsistent with the ALJ's findings. Although Dr. Frieman suggested referral for disability consideration, she did not opine that plaintiff is disabled. The ALJ made a disability evaluation and found plaintiff not disabled. He did not err in considering Dr. Frieman's report.

Finally, Dr. Franz wrote a letter on Aug. 18, 2003, discussing plaintiff's condition. (R. 787–88). In it she noted that she had diagnosed plaintiff with fibromyalgia in January, 1997 and with IBS "that has been recalcitrant to the usual medications for irritable bowel syndrome." (R. 787). She also discussed plaintiff's ability to work:

> As can be expected, Mr. Beauclair's symptoms got worse with regard to fibromyalgia as the legal proceedings [regarding his current incarceration] moved forward. This resulted in his inability to perform his duties at all eventually. He has asked me to com-

4. Plaintiff makes argument concerning Mr. Cain's statement regarding hypochondriasis in addressing the ALJ's finding regarding credibility, and the court will address that argument when it considers the credibility determination. Plaintiff makes no argument that the alleged absence of hypochondriasis would produce a more-restrictive RFC.

ment as to the fact that I wrote letters stating that he was unable to work due to fibromyalgia syndrome and severe irritable bowel syndrome which, indeed I did during that time he was unable to work while he was under my care.

... Because of the significance and severity of the mental impact of [the legal] proceedings on Mr. Beauclair, I did not pursue functional capacity evaluation testing prior to his incarceration.

...

It is my belief that Mr. Beauclair suffers from fibromyalgia syndrome and does, indeed have severe irritable bowel syndrome. Prior to his incarceration, he was unable to perform the duties of his line-painting business secondary to the pain related to his fibromyalgia certainly augmented by the psychological and emotional stress related to his incarceration.

(R. 787–88).

This evidence supports the Appeals' Council's finding that Dr. Franz opined that plaintiff was unable to work at his line-painting business but did not opine that plaintiff is unable to perform all work. The Appeal's Council's finding is further supported by Dr. Franz's statement that she did not pursue functional capacity evaluation. By that statement, Dr. Franz acknowledged that she did not know whether plaintiff was able to perform work other than his line-painting business.

Plaintiff argues Dr. Franz's statement that plaintiff "was unable to work due to fibromyalgia symptoms," (R. 787) "is all inclusive for any and all work of substantial gainful activity." ("Supplemental Complaint")(Doc. 11, Attach.1, p. 18). The court disagrees. While plaintiff's interpretation is one reasonable interpretation of Dr. Franz's letter, the Appeals Council's interpretation is quite reasonable in the circumstances. To interpret Dr. Franz's

letter to opine that plaintiff can do no work would be to ascribe to her an opinion which she acknowledged she did not make the necessary functional capacity evaluation to support. When Dr. Franz first suggested plaintiff's incapacity, she stated he became unable "to perform his duties at all eventually." (R. 787). When she later summarized her opinion, she stated, "he was unable to perform the duties of his line-painting business." (R. 788). Her use of the phrase "duties of his line-painting business" in her summary, in relation to her statements in the earlier paragraph that plaintiff eventually became unable to perform his "duties" and that she wrote letters stating that he was unable to work, suggests that in both paragraphs she was referring to plaintiff's ability to perform the duties of his job as a line-painter. Although the evidence might reasonably support a finding that Dr. Franz believed plaintiff could do no work, it also supports the Appeals Council's finding.

"Where conflicting evidence would allow reasonable minds to differ as to whether a claimant is entitled to benefits, the responsibility for that decision falls on the ALJ." *Alexander v. Barnhart,* 287 F.Supp.2d 944, 962 (E.D.Wis.2003) (citing *Binion ex rel. Binion v. Chater,* 108 F.3d 780, 782 (7th Cir.1997)); *see also, Cruse v. Bowen,* 867 F.2d 1183, 1184 (8th Cir.1989) ("the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence") (quoting *Consolo v. Fed. Maritime Comm'n,* 383 U.S. 607, 620, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966)). The ALJ determined that plaintiff is unable to perform his past relevant work, including his work as a line-striper. (R. 23–24, 25). Dr. Franz's opinion as explained by the Appeals Council is consistent with that determination. Therefore, the court concludes

that the Commissioner did not err in evaluating the medical source opinions.

## V. Consideration of All of Plaintiff's Impairments

Plaintiff claims the Commissioner did not properly consider all of plaintiff's impairment, citing herniated nucleus pulposus, myofascial pain syndrome, and irritable bowel syndrome (IBS). Plaintiff also alleges other impairments based upon evidence which the court previously determined is not new and material and may not be considered. The court cannot evaluate whether the Commissioner should have considered impairments which were not in the evidence before the ALJ or the Appeals Council.

An impairment is not considered severe if it does not significantly limit plaintiff's ability to do basic work activities. 20 C.F.R. § 404.1521 (2003). The Tenth Circuit has interpreted the regulations and determined that to establish a "severe" impairment at step two of the sequential evaluation process, plaintiff must make only a *"de minimis"* showing. *Hinkle v. Apfel,* 132 F.3d 1349, 1352 (10th Cir.1997). Plaintiff need only show that an impairment would have more than a minimal effect on his ability to do basic work activities. *Williams,* 844 F.2d at 751. However, he must show more than the mere presence of a condition or ailment. *Id.* (citing *Bowen v. Yuckert,* 482 U.S. 137, 153, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987)). If an impairment's medical severity is so slight that it could not interfere with or have a serious impact on plaintiff's ability to do basic work activities, it could not prevent plaintiff from engaging in substantial work activity and will not be considered severe. *Hinkle,* 132 F.3d at 1352.

■ Plaintiff's argument regarding herniated nucleus pulposus (HNP) is without merit. The evidence upon which plaintiff relies in this regard is an MRI dated Jul. 19, 1994, concluding "Small central HNP L4–5 level." (R. 597). The problem with this argument is that plaintiff worked for at least five years after the diagnosis at issue, and plaintiff points to no evidence of worsening of this condition. Therefore, the evidence does not establish that this condition is disabling. *Dixon v. Sullivan,* 905 F.2d 237, 238 (8th Cir.1990). Plaintiff has shown no impact on his ability to do basic work activities resulting from this impairment. It is not error for the ALJ not to have considered HNP as a "severe" impairment.

■ Plaintiff's arguments regarding myofascial pain syndrome (MPS) are equally unavailing. Plaintiff makes much of evidence referring to "trigger points" and argues that "tender points" relate to a diagnosis of fibromyalgia, whereas "trigger points" relate to a diagnosis of myofascial pain syndrome. Therefore, in plaintiff's view, he must have myofascial pain syndrome which the ALJ did not consider. Much of plaintiff's argument relies upon Dr. Radadiya's notes which the court has already determined may not be considered. Moreover, even if the court were to consider those notes, Dr. Radadiya explained that fibromyalgia, myofascial pain syndrome, and chronic fatigue syndrome are commonly overlapping syndromes and concluded that plaintiff has fibromyalgia. (Doc. 11, Attach.1, p. 29).

As plaintiff's argument implies, the consultative examiner, Dr. Perkins, found "four paired trigger points positive" in the conclusion of his report, and concluded that plaintiff has "Fibromyalgia with left shoulder pain." (R. 247). Earlier in the report, Dr. Perkins described the location of "tender points." (R. 246). The ALJ mentioned this examination in the decision. (R. 21) (citing Exhibit 5F (R. 245–49))("There were 4 trigger points positive

out of 18 for fybromyalgia.")[5]. Subsequently, the ALJ relied on "a minimal number of tender points," in finding that plaintiff's allegations of disabling symptoms are not credible. (R. 23).

In the Merck Manual, "Myofascial Pain Syndrome" is classified under "Fibromyalgia," as one of "A group of common nonarticular disorders characterized by achy pain, tenderness, and stiffness of muscles, areas of tendon insertions, and adjacent soft tissue structures." The Merck Manual of Diagnosis and Therapy 481 (Mark H Beers, M.D. & Robert Berkow, M.D. eds., 17th ed.1999). Thus, the two impairments are closely related.

Although there is merit in plaintiff's argument that "tender points" relate to fibromyalgia and "trigger points" relate to myofascial pain syndrome, it is clear the ALJ here used the two terms interchangeably. Research into case law reveals that the terms "trigger points" and "tender points" are often used interchangeably. *See, e.g., Johnson v. Metropolitan Life Ins. Co.,* 437 F.3d 809, 814 (8th Cir.2006); *Moore v. Barnhart,* 114 Fed.Appx. 983, 991 (10th Cir.2004); *Bartyzel v. Comm'r of Soc. Sec.,* 74 Fed.Appx. 515, 526 (6th Cir. 2003) (citing both "focal tender points" and "focal trigger points"); *Kelley v. Callahan,* 133 F.3d 583, 586–87 (8th Cir.1998) (one physician cited—using both terms at different times in progress notes); *Clark v. Aetna Life Ins. Co.,* 395 F.Supp.2d 589, 609–10 (W.D.Mich.2005); *Quigley v. UNUM Life Ins. Co.,* 340 F.Supp.2d 215, 219 (D.Conn.2004); *Alexander v. Barnhart,* 287 F.Supp.2d 944, 963 (E.D.Wis. 2003); *Dorsey v. Provident Life and Acc. Ins. Co.,* 167 F.Supp.2d 846, 850 (E.D.Pa. 2001); *Gister v. Massanari,* 189 F.Supp.2d 930, 934–35 (E.D.Wis.2001); *Ward v. Appfel,* 65 F.Supp.2d 1208, 1216 n. 1 (D.Kan. 1999) (finding it unnecessary to decide whether the difference is merely semantic). The mere fact that it has been mentioned that plaintiff has "trigger points" is, therefore, not sufficient to establish that plaintiff has myofascial pain syndrome.

The Commissioner will only consider impairments shown by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1508. Plaintiff has pointed to no evidence that he has been diagnosed with myofascial pain syndrome based upon medically acceptable clinical and laboratory diagnostic techniques. It is not error for the ALJ not to consider myofascial pain syndrome.

■ Plaintiff also claims that the ALJ failed to properly consider his IBS. The Commissioner argues plaintiff's IBS was controlled on medication, there is no indication plaintiff was consistently given the diagnosis of IBS and, in any event, the ALJ found "severe" impairments and therefore considered all of plaintiff's impairments including IBS in making his decision. The court does not agree with the Commissioner.

The ALJ discussed IBS at several points in the decision. He noted that plaintiff was discharged from the hospital on Feb. 18, 1999 with a diagnosis of "irritable bowel disease." (R. 20) (citing Ex. 2F, p. 38 (R. 227)). He noted a diagnosis of IBS on discharge from the hospital on Aug. 3, 2001 (R. 22) (citing Ex. 8F, p. 96 (R. 277)), and he noted that the Larned State Hospital diagnosed plaintiff with IBS. (R. 22) (citing Ex. 15F, p. 168 (R. 372)). He stated that the Larned State Hospital "notes show his irritable bowel syndrome was

---

**5.** The court discusses the difference between Dr. Perkin's finding of "four paired trigger points" and the ALJ's statement regarding "4 trigger points" in its evaluation of the credibility determination.

stable on medication." (R. 22) (citing Ex. 15F, p. 175–180 (R. 360–65)).

At step two of the sequential evaluation, the ALJ noted that spinal disorder is not medically determinable in this case and that plaintiff's depression is not severe. (R. 19). However, although the ALJ recognized the diagnoses of IBS, he did not discuss IBS in his consideration of "severe" impairments at step two. Further, the ALJ did not discuss IBS in his RFC assessment. These failures are error requiring remand.

While it is clear the ALJ acknowledged plaintiff has IBS, it is not clear whether the ALJ considered the effects of that impairment on plaintiff's ability to work. The Commissioner argues that the IBS was controlled on medication, and the ALJ stated that it is "stable on medication." Both of these arguments are based upon the "Release Summary" from Larned State Hospital which stated "Symptoms of irritable bowel syndrome were stable." (R. 362). The summary does not say that the symptoms were stabilized by medication. As plaintiff points out, "stable" is not equivalent to "controlled." Moreover, it is not clear what "stable" means in the release summary. Perhaps it means the condition was not changing; perhaps it means it was not a problem requiring immediate concern and treatment while plaintiff was at the hospital; perhaps it means the condition is controlled. The court does not know, and the ALJ did not address the issue. The release summary made several recommendations regarding IBS: that plaintiff *discontinue Hyoscyamine,* consider *Fibereon* daily with eight ounces of water, and exercise regularly. (R. 362). Despite these recommendations, the hospital included in plaintiff's list of medications on release: *Hyoscyamine* Sulfate and *Metamucil.* (R. 363). However, there is no discussion of the impact of continuing the use of hyoscyamine in light of the recommendation that its use be discontinued or of using Metamucil rather than the recommended Fibereon. The court may not resolve these ambiguities in the record. That is the duty of the Commissioner. She did not resolve them, and the case must be remanded for her to complete her duty.

## VI. Credibility Determination

In a final argument, plaintiff claims the ALJ erred in evaluating the credibility of his symptom allegations. The Commissioner argues that the ALJ properly considered plaintiff's allegations and found them incredible. Although much of the ALJ's credibility determination was proper and supported by evidence in the record, the court finds that certain factors relied upon by the ALJ are unsupported by the record and, therefore, require remand for a proper credibility determination.

### A. Legal Standard

The Tenth Circuit has explained the analysis for considering subjective testimony regarding symptoms. *Thompson v. Sullivan,* 987 F.2d 1482, 1488 (10th Cir. 1993) (dealing specifically with pain).

A claimant's subjective allegation of pain is not sufficient in itself to establish disability. *Gatson v. Bowen,* 838 F.2d 442, 447 (10th Cir.1988). Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment, *Luna v. Bowen,* 834 F.2d 161, 163 (10th Cir.1987) (citing *Frey [v. Bowen* ], 816 F.2d [508,] 515 [ (10th Cir.1987) ]; *Nieto v. Heckler,* 750 F.2d 59 (10th Cir. 1984)), that could reasonably be expected to produce the alleged disabling pain. *Luna,* 834 F.2d at 163; 42 U.S.C. § 423(d)(5)(A). This court has stated:

The framework for the proper analysis of Claimant's evidence of pain is set out in *Luna v. Bowen,* 834 F.2d 161 (10th Cir.1987). We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling. *Musgrave v. Sullivan,* 966 F.2d 1371, 1375–76 (10th Cir. 1992) (citing *Luna,* 834 F.2d at 163–64).

*Thompson,* 987 F.2d at 1488.

■■■ An ALJ's credibility determinations are generally treated as binding on review. *Talley v. Sullivan,* 908 F.2d 585, 587 (10th Cir.1990). "Credibility determinations are peculiarly the province of the finder of fact." *Diaz v. Sec'y of Health & Human Serv.,* 898 F.2d 774, 777 (10th Cir.1990). Therefore, in reviewing the ALJ's credibility determinations, the court will usually "defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility." *Casias v. Sec'y of Health & Human Serv.,* 933 F.2d 799, 801 (10th Cir.1991). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen,* 838 F.2d 1125, 1133 (10th Cir.1988).

### B. The ALJ's Decision

The ALJ stated the standard for evaluating the credibility of plaintiff's allegations of symptoms. (R. 22) He found a "loose nexus" between plaintiff's impairments and his alleged symptoms. (R. 23). Therefore, he considered all of the evidence, subjective and objective, to determine the credibility of plaintiff's allegations.

The ALJ provided numerous reasons to find plaintiff not credible. He noted (1) plaintiff's spotty earnings record, (2) plaintiff's activities of daily living before his incarceration are not commensurate with disability, (3) the record shows his depression and anxiety were due in large part to the fact he was facing imprisonment, (4) he was noted as hypochondriacal, (5) he had a minimal number of tender points, (6) his x-rays were generally negative, (7) he was taking no medication for his mental condition at the time of the hearing, and (8) the objective medical records do not support the extent of symptoms alleged.

### C. Analysis

■■■ Plaintiff argues extensively he has established that his impairments *could* reasonably be expected to produce the symptoms alleged. Although plaintiff does not specifically state it, his arguments imply that because his impairments could reasonably produce his alleged symptoms, the ALJ must accept his allegations. That is not a correct statement of the law. Because plaintiff's impairments could produce disabling symptoms, there is a "loose nexus" between plaintiff's impairments and his alleged symptoms and the Commissioner was required to consider all of the evidence, subjective and objective, in determining the credibility of plaintiff's allegations. That is what the ALJ did.

Plaintiff argues that unless there is evidence of malingering, the ALJ may find plaintiff's allegations incredible only upon finding clear and convincing evidence. This argument fails for two reasons. First, the Larned State Hospital "Psychological Information Short Form" stated, "testing, presentation of self and history all point strongly to Mr. Beauclair being hyponchondriacal." (R. 364). That is some evidence of malingering. The hospital report did not specifically find plaintiff

was malingering, did not find hypochondriasis, and noted that a finding regarding somatic complaints was beyond the competency of the report. *Id.* However, the hospital did make the strong suggestion quoted above and noted by the ALJ. (R. 23). The ALJ did not find that plaintiff is hypochondriacal, but he acknowledged the hospital's suggestion as a reason for finding plaintiff not credible. That is a proper inference from the evidence presented. That plaintiff has never been diagnosed as hypochondriacal may affect the weight given the hospital's report. Nonetheless, it is some evidence of the incredibility of plaintiff's allegations.

Plaintiff suggests the Larned State Hospital report may not be relied upon because it was made while plaintiff was incarcerated after conviction of a felony and during a time for which the ALJ noted plaintiff may not receive benefits even if found disabled. While it is true that plaintiff may not receive benefits for disability during a period of incarceration for a felony, the Commissioner must nonetheless determine whether plaintiff is "disabled" within the meaning of the Act during the period for which he applied. Thus, it is proper for the ALJ to consider the report produced by the Larned State Hospital.

Second, "clear and convincing" evidence is not the standard used in the Tenth Circuit to determine the credibility of plaintiff's allegations. The standard in this circuit is as discussed above. A fair reading of the decision reveals that the ALJ understood the correct legal standard and applied it to the facts of this case.

Plaintiff presents considerable argument that the evidence supports finding his allegations credible, but much of that argument merely asks the court to reweigh the evidence and reach a different conclusion than did the ALJ—that plaintiff's allegations are credible. For example, Plaintiff argues the ALJ may not assert "spotty earnings" because there are only two years which show no earnings between the time plaintiff was fifteen and the present. (Doc. 17, p. 4). While plaintiff is correct in his characterization of the record regarding work, the record also reveals only two years when plaintiff earned more than $10,000.00–1991 and 1999. The record reveals earnings less than $5,000.00 in thirteen years, and between $5,000.00 and $10,000.00 only six years. The ALJ's characterization of "spotty earnings" is supported by substantial evidence. The court may not reweigh the evidence where it supports the Commissioner's decision even if the court would have reached a different conclusion in the first instance. *White,* 287 F.3d at 905.

One reason relied upon by the ALJ in finding plaintiff not credible, however, is not supported by substantial evidence in the record. The ALJ found that plaintiff had "a minimal number of tender points" based, presumably, upon his finding that Dr. Perkins found only four positive "trigger points" out of eighteen for fibromyalgia. (R. 21, 23). The record reveals, however that Dr. Perkins found four *pairs* of "trigger points" positive on his exam. (R. 247). Thus, Dr. Perkins found twice as many positive "trigger points" as noted by the ALJ. Eleven positive "tender points" out of eighteen fixed locations on the body are generally considered necessary to a definitive diagnosis of fibromyalgia. *Sarchet v. Chater,* 78 F.3d 305, 306 (7th Cir. 1996). As the ALJ noted, four positive "tender points" would support a finding of a "minimal number of positive 'tender points.'" It is less clear that eight positive "tender points" would be a "minimal" number compared to the eleven positive "tender points" necessary.

Because the ALJ considered but one-half of the "tender points" found by Dr.

Perkins, the court is unable to know whether the ALJ would find a minimal number of "tender points" if he were aware of the correct number.

Because a credibility assessment requires consideration of all the factors "in combination," [ ] when several of the factors *relied upon* by the ALJ are found to be unsupported or contradicted by the record, [a court is] precluded from weighing the remaining factors to determine whether they, in themselves, are sufficient to support the credibility determination.

*Bakalarski v. Apfel,* No. 97–1107, 1997 WL 748653, *3 (10th Cir. Dec.3, 1997) (emphasis in original)(quoting *Huston,* 838 F.2d at 1132 n. 7 (citation omitted)). Therefore, remand is necessary for the Commissioner to perform a proper credibility analysis in accordance with this opinion.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision be REVERSED and the case be REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with this opinion.

Copies of this recommendation and report shall be delivered to counsel of record for the parties. Pursuant to 28 U.S.C. § 636(b)(1), Fed.R.Civ.P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy. Failure to timely file objections with the court will be deemed a waiver of appellate review. *Hill v. Smith-Kline Beecham Corp.,* 393 F.3d 1111, 1114 (10th Cir.2004).

March 17, 2006.