**Richard J. SELMAN, Jr.,**
**Plaintiff-Appellant,**

v.

**Joseph A. CALIFANO, Jr., Secretary of Health, Education, and Welfare, Defendant-Appellee.**

**No. 79–1201.**

United States Court of Appeals, Tenth Circuit.

Submitted June 6, 1979.

Decided April 28, 1980.

Richard J. Selman, Jr., pro se.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., R. E. Thompson, U. S. Atty., Albuquerque, N. M., Randolph W. Gaines, Chief of Litigation, Lillie Mae Price, Atty., Dept. of Health, Ed. and Welfare, Baltimore, Md., for defendant-appellee.

Before DOYLE, McKAY and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

Richard J. Selman, Jr., an airline pilot for Eastern Air Lines, contests his classification as an employee for purposes of the social security laws. The Social Security Administration (SSA) refused to rule that he was an independent contractor. After exhausting administrative remedies, Selman sought review in district court, which affirmed the SSA's determination and denied Selman's motion requesting a remand for the purpose of taking additional evidence.

Selman makes the following contentions in his appeal to this Court: (1) the SSA's findings are not supported by substantial evidence; and (2) the district court abused its discretion in denying the motion to remand for additional evidence. In addition, he has asked that our decision on his appeal be delayed until a new contract, currently being negotiated between the Air Line Pilots Association and Eastern Air Lines (Eastern), can be submitted to this Court.

The applicable section of the Social Security Act, 42 U.S.C. § 410(j) defines "employee" as anyone who has such a status under the "usual common law rules," referring to the master-servant concepts developed under the law of agency. A number of factors have been utilized in determining whether a person is an "employee" rather than an independent contractor. 20 C.F.R. § 404.1004(c) states the main element of the test as employer right to control and direct not only the result to be achieved by the person, but also the means by which the result is achieved. The right to discharge

and whether the employer furnishes the tools and the place of work are also important factors, indicative of an employer-employee relationship. *Id.* Other factors noted in *United States v. Silk*, 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947), are the opportunities for profit and loss, investment in facilities, permanency of the relationship between employer and worker, the skill required in doing the work and whether the service is an integral part of the employer's business. *Id.* at 716, 67 S.Ct. at 1469. No one factor is controlling, however, and the circumstances must be looked at in totality. *Id.* at 716, 719, 67 S.Ct. at 1469, 1471.

The evidence submitted at the administrative hearing is uncontroverted and consists mainly of the contract between Eastern and the Air Line Pilots Association.[1] The administrative law judge made the following pertinent findings of fact:

1. Eastern Air lines [sic], insofar as practicable, retains the right to control the details of the work performed for them by the claimant.

2. Claimant's earnings are not dependent on the profit or loss of Eastern Air Lines and are based on a specified salary schedule.

3. Claimant's investment in facilities is minimal and, in comparison with the investment of Eastern Air Lines, are of little significance.

4. There exists a permanent relationship between claimant and Eastern Air Lines.

5. The skills required in the performance of claimant's job are not such as to indicate either an employer-employee relationship or an independent contractor status.

These findings are supported by substantial evidence, as discussed below, and are therefore conclusive. *See* 42 U.S.C. § 405(g). We also hold that these findings show employee status as a matter of law.

It is difficult to understand why Selman seeks reclassification to independent contractor status, which would push his social security taxes up to 8.1% from the current 6.13% on the first $25,900 of annual earnings. *See* I.R.C. §§ 1401, 3101. Nevertheless, he persists and attacks the findings of the SSA; we therefore deal with his contentions.

First, Selman emphasizes that in flying an airplane he must exercise independent judgment in many instances and otherwise the Federal Aviation Administration (FAA), not Eastern, controls how he flies the plane. The use of independent judgment, and the accompanying loss of some control by the employer, is a characteristic of all professional services. Professionals are not automatically excluded from employee status, however, unless they are engaged in an independent business in which they offer their services to the public. 20 C.F.R. § 404.1004(c)(2). Selman does not fall into this category because he is prohibited by contract from flying professionally for anyone but Eastern and the national guard or military reserve.

Recognizing that special considerations are required in determining the status of professional persons, courts have found an employee relationship by virtue of the degree of control present in areas outside those in which professional judgment must be exercised. *See Cody v. Ribicoff*, 289 F.2d 394 (8th Cir. 1961) (doctor found an employee); *Flemming v. Huycke*, 284 F.2d 546 (9th Cir. 1960) (same). The evidence here shows Eastern had the right to control most nonprofessional facets of the employment relationship. The contract contains the following provisions: Pilots cannot fly for others or engage in any business activities adverse to Eastern's interests; the number of hours a pilot can fly per month is limited; training and proficiency checks are required by Eastern and may exceed those required by the FAA; Eastern sets up the flight schedules and may require a pilot to

---

1. This contract was in effect from January 1975 through April 1977. The 1977 to 1979 contract was not entered into evidence at the administrative level, and the district court refused to

remand for reconsideration in light of the new contract. That this specific contract is no longer in effect does not invalidate the evidence for our purposes on review.

take a flight when no pilot has bid for it; and Eastern can discipline and discharge a pilot, subject only to certain requirements of notice, hearing and appeal.

It is uncontroverted that the FAA extensively regulates how the pilot is to fly the plane. Since both the airline and the pilot are subject to the regulations, and therefore neither completely controls the means by which the job is accomplished, this fact is at least neutral. There is evidence, however, that Eastern retains the right to control the details of the work, subject to the FAA regulations.

An Eastern pilot's base pay is computed per hours of flying time; this amount is then varied according to the type of plane, the time of day, and the number of miles flown. A minimum monthly pay is guaranteed. Consequently, Selman's income is not directly affected by the profitability of his or the airline's activities. He can, of course, make more money by working more hours, but this is not "profit" in the sense that independent professionals profit by establishing fees that exceed their costs of providing services to clients or patients.

It is clear that Eastern furnishes the vast majority of the "tools" required by an airline pilot, and has made the investment in the aircraft and the terminal, booking and administrative facilities. Selman furnishes his own uniform, a flight bag and a tool kit, which are minimal by comparison. Although Selman has "invested" by obtaining training and a pilot's license, this is also true of essentially all people who work in a skilled occupation or profession, whether they serve as employees or independent contractors. Eastern also furnishes the place of work, the airplane; that it does not own, but leases, some airplanes and terminals is irrelevant.

There is extensive evidence that the relationship between Eastern and the pilots is contemplated as a permanent one. The contract provides for longevity pay rates, vacations, seniority provisions, leaves of absence, sick leave, promotions, life insurance and pension plans. These types of benefits are inconsistent with the one-job relationship existing between an employer and an independent contractor. That the pilots' contracts are usually for two-year terms does not affect the intended permanency of the relationship.

It is common sense that an airline pilot possesses a high degree of technical skill, but that skill is standard among all pilots. We agree with the administrative law judge that this factor is neutral.

The findings in favor of employee status, supported as they are by the record, provide a sound and unassailable basis for the employee classification. There can be no doubt that Selman would be considered the servant of Eastern under the common law rules referred to in 42 U.S.C. § 410(j).

■ Selman filed a motion under 42 U.S.C. § 405(g) in the district court for remand to consider the following additional information: a prospectus on Eastern Air Lines Profit Sharing Plan; the 1977 to 1979 contract between Eastern and the Air Line Pilots Association; the FAA flight information and procedure manual; and a notification of a limited partnership available to employees for the purpose of owning an airplane leased to Eastern. The district court judge denied the motion because the evidence was merely cumulative. We have examined the proffered evidence and agree it is mostly cumulative and, to the extent it contains any new information, would not affect the result. Therefore, we affirm the denial as within the district court's discretion.

■ Selman has filed a motion in this Court requesting we delay consideration of his appeal until he can submit a copy of the new pilots' employment contract currently being negotiated with Eastern. He argues that the information this contract contains—additional wage variables for a pilot's ability to conserve fuel—is significant concerning the factor of whether he can profit from his own endeavors. This contract apparently is not yet a part of the employment relationship; at least it was not at the time of the motion. We must decide the appeal on the record made below.

We cannot consider new evidence proffered at this level, except to determine whether the case should be remanded under 42 U.S.C. § 405(g). The new contract, as represented to us, would not affect the result in this case. The motion to delay our consideration is denied.

The judgment is AFFIRMED.