**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

EMANUEL VERNELL PITTMAN,

     Plaintiff - Appellant,

v.

COMMISSIONER, SSA,

     Defendant - Appellee.

No. 17-1407
(D.C. No. 1:16-CV-01347-KLM)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **HOLMES**, and **PHILLIPS**, Circuit Judges.
_____

Emanuel Vernell Pittman appeals pro se from the district court's judgment

affirming the Commissioner's denial of his applications for social security disability

benefits and supplemental security income. Exercising jurisdiction under 42 U.S.C.

§ 405(g) and 28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. BACKGROUND

Mr. Pittman alleged that he was disabled due to a visual impairment, post-traumatic stress disorder, insomnia, bipolar disorder/manic depression, a C-6 fracture, and anti-personality disorder. After a hearing where Mr. Pittman was represented by counsel, an administrative law judge (ALJ) denied his applications at the last step of the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). The ALJ found that although Mr. Pittman had several severe impairments (asthma, bipolar disorder, social phobia), none met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Pt. 404, Subpart P, Appendix 1, commonly referred to as the "Listings," that are so severe as to preclude employment. As relevant to this appeal, the ALJ considered Listings 12.04 (affective disorders) and 12.06 (anxiety related disorders). The ALJ then found that Mr. Pittman had the residual functional capacity to perform work in the medium exertional category provided that he was limited to simple, routine, and repetitive tasks; had no more than occasional interaction with supervisors, coworkers, and the public; and no concentrated exposure to fumes, odors, dusts, gases, or poor ventilation. With these limitations, the ALJ determined that Mr. Pittman, who had no past relevant work, could perform work existing in significant numbers in the national economy, such as cleaner/housekeeper, marker, and cafeteria attendant. The ALJ therefore denied his applications.

Mr. Pittman sought judicial review in the district court, where he represented himself. The district court affirmed the ALJ's decision. Mr. Pittman appeals.

2

## II. DISCUSSION

### A. Standard of review

Our task in this appeal is limited to determining whether substantial evidence supports the agency's factual findings and whether the agency applied the correct legal standards. *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). We cannot "reweigh the evidence" or "substitute our judgment for that of the agency." *Id.* (internal quotation marks omitted).

### B. Opening brief issues

Liberally construing Mr. Pittman's pro se filings, *see Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008), we identify two issues in his opening brief. In the first, he states that he "suffer[s] from at least two of the categories listed in 12.04 and 12.06." Aplt. Opening Br. at 3. He does not elaborate on this argument, but we interpret his reference to the two categories to mean the only two categories he discussed in his district-court brief: (1) social functioning and (2) concentration, persistence, and pace. These categories are two of the "paragraph B" criteria of Listings 12.04 and 12.06.[1]

---

[1] Although Listings 12.04 and 12.06 have been amended since the ALJ's January 20, 2016 decision, we refer to the version of the Listings and all other "regulations in effect at the time of ALJ's decision," *Newbold v. Colvin*, 718 F.3d 1257, 1261 n.2 (10th Cir. 2013) (internal quotation marks omitted). To meet or medically equal Listing 12.04, an impairment must satisfy the "paragraph A" and

(continued)

3

To satisfy the paragraph B criteria of those Listings, a mental impairment must result in at least two of the following: "Marked restriction of activities of daily living"; "Marked difficulties in maintaining social functioning"; "Marked difficulties in maintaining concentration persistence, or pace"; or "Repeated episodes of decompensation, each of an extended duration." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04(B), 12.06(B). A "marked" difficulty is more severe than a moderate difficulty and is one that "interfere[s] seriously with [a claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." *Id.* § 12.00(C).

The ALJ determined that Mr. Pittman was only moderately limited in social functioning and concentration, persistence, or pace.[2] Because Mr. Pittman has not explained why he thinks this was an error, the Commissioner asserts that he has waived appellate consideration of his first issue. We agree. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only

---

"paragraph B" criteria, or the "paragraph C" criteria. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04 ("The required level of severity for [affective] disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied."). To meet or medically equal Listing 12.06, an impairment must satisfy the paragraph A criteria and either the paragraph B or paragraph C criteria. *See id.* § 12.06. ("The required level of severity for [anxiety related] disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied."). The ALJ determined that Mr. Pittman's mental impairments did not satisfy either the paragraph B or paragraph C criteria of either Listing, but Mr. Pittman focuses only on the ALJ's determination regarding the paragraph B criteria.

[2] The ALJ also found that Mr. Pittman was mildly limited in activities of daily living and that he had experienced no extended episodes of decompensation. Mr. Pittman does not challenge those findings.

4

those of [an appellant's] contentions that have been adequately briefed for our review."); *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005) (requiring a pro se appellant's brief to "contain more than a generalized assertion of error, with citations to supporting authority" (ellipsis and internal quotation marks omitted)).

Nonetheless, we have reviewed the medical records pertaining to Mr. Pittman's condition between his alleged onset date (October 22, 2013) and the date of the ALJ's decision (January 20, 2016), and we conclude that substantial evidence supports the ALJ's findings that Mr. Pittman is no more than moderately limited in social functioning and concentration, persistence, or pace. During examinations, Mr. Pittman was sometimes reported to be uncooperative or combative, but other times he was described as cooperative or pleasant. Similarly, mental health providers noted that in group situations, Mr. Pittman was at times uncooperative, but generally he was appropriately engaged and moderately receptive to feedback. Further, despite one provider's observation that Mr. Pittman had unspecified difficulties concentrating, *see* R., Vol. 2 at 749, Mr. Pittman admitted he could pay attention for one to two hours at a time, and mental health providers observed that his concentration was within normal limits, *see id.* at 724, 754. This evidence substantially supports the ALJ's finding that Mr. Pittman was moderately, not markedly, limited in social functioning or concentration, persistence or pace.

The second issue we discern in Mr. Pittman's opening brief is that we should supplement the administrative record with the results of a CT scan of his brain

5

performed in November 2016, well after the ALJ's decision and during the district court proceedings. Mr. Pittman has submitted the results of that scan with his reply brief. But we lack authority to consider evidence outside the administrative record except to determine whether to remand pursuant to sentence six of 42 U.S.C. § 405(g). *See Selman v. Califano*, 619 F.2d 881, 884–85 (10th Cir. 1980) ("We must decide the appeal on the record made below. We cannot consider new evidence proffered at this level, except to determine whether the case should be remanded under 42 U.S.C. s 405(g)."). In relevant part, sentence six provides that a district court "may at any time order additional evidence to be taken before the Commissioner . . . but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g).

We agree with the Commissioner that Mr. Pittman has not shown a sentence-six remand is appropriate. First, the result of the 2016 CT scan is not new but cumulative of other evidence that was before the ALJ. The 2016 CT scan showed that Mr. Pittman has "posttraumatic encephalomalacia of both frontal lobes [and his left] temporal lobe *unchanged*." Aplt. Reply at 5 (emphasis added). The notation that the condition of Mr. Pittman's brain was "unchanged" stems undoubtedly from two CT scans and an MRI of his brain performed on October 26, 2009, at the same facility as the 2016 CT scan. The impression from the first CT scan was: "Chronic appearing left frontal lobe and anterior left temporal hypodensity likely from remote trauma or infarct, less likely subarachnoid cyst." R., Vol. 2 at 327. The finding from

the second CT scan was: "Mild bifrontal and left anterior temporal *encephalomalacia*, consistent with old trauma." *Id.* at 329 (emphasis added). And the impression from the MRI reads: "Old, probable traumatic inferior bifrontal lobe injury." *Id.* at 331. Hence, the 2016 CT scan does not provide the "new evidence" required for a sentence-six remand.

Second, the 2016 CT scan, like the 2009 imaging tests, says nothing about any functional limitations due to Mr. Pittman's brain injury. At step five, the benefits question is not simply whether Mr. Pittman has a brain injury, but what he can still do despite his limitations. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v) (explaining that at step five, the agency considers its "assessment of [a claimant's] residual functional capacity" along with "age, education, and work experience to see if [the claimant] can make an adjustment to other work"); *id.* §§ 404.1545 (a)(1), 416.945(a)(1) (explaining that residual functional capacity "is the most you can still do despite your limitations"). The 2016 CT scan is therefore not material to the disability inquiry. *See Wilson v. Astrue*, 602 F.3d 1136, 1148 (10th Cir. 2010) ("Evidence is material if the [Commissioner's] decision might reasonably have been different had the new evidence been before him when his decision was rendered." (brackets and internal quotation marks omitted)).

For these reasons, we conclude that the 2016 CT scan does not merit a sentence-six remand.

7

## C. Reply brief issues

Mr. Pittman advances several new arguments in his reply brief. He first takes issue with the Commissioner's contention that only his mental impairments are before this court. He claims his "physical issues are before the court because they play a great role in [his] disabling issue with [his] mental health disease." Aplt. Reply at 1. He points out that on page six of the ALJ's decision, the ALJ referred to some of his physical complaints (fracture of C6 vertebra, pain in upper neck and lower back radiating to neck, knees, and feet). But in the district court, Mr. Pittman did not claim the ALJ erred in handling his physical impairments. Although he stated that at the time he requested the district court to order a brain scan, his feet were swelling up and his hands hurt from nerve damage from his C-6 fracture, he alleged no error by the ALJ with respect to those complaints. *See* R., Vol. 1 at 75. He has therefore waived appellate review concerning his purely physical impairments. *See Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (explaining that the scope of appellate review in a social security case "is limited to the issues the claimant properly preserves in the district court and adequately presents on appeal"). In any event, the portion of the ALJ's decision Mr. Pittman points to was merely a recitation of Mr. Pittman's own description of his physical impairments. Mr. Pittman does not point to any medical evidence of the mental limitations these physical impairments might cause him, the ALJ did not discuss any, and we see none in the record suggesting that Mr. Pittman's mental limitations are greater than the ALJ found. Therefore, even if we overlooked waiver, we would see no reason for reversal based

8

on the mere existence of some physical impairments potentially underlying his mental impairments.

Mr. Pittman next claims he has attached evidence to support his claim of neuropathy, which he alleges "was present but no diagnosis[,] just [him] complaining knees, feet, neck, & hands hurt." Aplt. Reply at 1. We fail to see any evidence pertaining to neuropathy in the attachments to his reply brief, and as noted, he has waived any challenges based on his physical impairments.

Finally, Mr. Pittman claims he was unaware of the 2009 CT scans, contending that he could have used them in his claims. He alleges that the agency knew about the 2009 scans but nonetheless refused to help him "come out of poverty." *Id.* But as discussed above, none of the 2009 imaging tests speaks to Mr. Pittman's functional limitations, which are the crux of the disability evaluation.

## III. CONCLUSION

The district court's judgment is affirmed. Because Mr. Pittman was a prisoner at the time he filed his action in the district court, the district court granted his request for permission to proceed without prepayment of filing fees (IFP) pursuant to 28 U.S.C. § 1915(a) and assessed partial payments of the filing fees in accordance with 28 U.S.C. § 1915(b). Still a prisoner when he filed his notice of appeal, Mr. Pittman sought to proceed IFP on appeal. We grant that motion, but we must consider whether the provisions of 28 U.S.C. § 1915(a) and (b), which are part of the Prison Litigation Reform Act of 1996 (PLRA), apply when a prisoner asks to proceed

IFP to seek judicial review of the Commissioner's final decision regarding social security benefits. We conclude that they do.

Section 1915(a) applies when a prisoner seeks "to bring a civil action or appeal a judgment in a civil action or proceeding without prepayment of fees or security therefor." § 1915(a)(2). So too does § 1915(b)(1), which explains that a court must assess and collect partial payments from a prisoner who "brings a civil action or files an appeal in forma pauperis." And a case filed in the district court to contest a final agency decision concerning social security benefits is termed a "civil action" in the statute authorizing such actions:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision *by a civil action* commenced . . . in the [appropriate] district court of the United States . . . .

42 U.S.C. § 405(g) (emphasis added). Therefore, as part of granting Mr. Pittman's motion to proceed IFP on appeal, we remind him that he remains obligated to continue making partial payments of his filing fees until they are paid in full.

Entered for the Court

Gregory A. Phillips
Circuit Judge

10