FILED
United States Court of Appeals
Tenth Circuit

July 11, 2019

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

PAULA J. CRAMPTON,

    Plaintiff - Appellant,

v.

COMMISSIONER, SSA,

    Defendant - Appellee.

No. 18-5075
(D.C. No. 4:17-CV-00074-GBC)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **MATHESON**, and **CARSON**, Circuit Judges.
_____

Paula J. Crampton, formerly known as Paula Jo Sams, applied for disability

insurance benefits (DIB) and supplemental security income (SSI). The

Commissioner of the Social Security Administration (SSA) denied her application,

and the district court affirmed the denial of benefits. Exercising jurisdiction under

28 U.S.C. § 1291 and 42 U.S.C. § 405(g), we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. BACKGROUND

Ms. Crampton was employed as a nurse until May 2009. She asserts that she has been unable to work since August 9, 2011, due to health problems. Ms. Crampton filed for DIB and SSI in 2013 and 2014, respectively, at the age of 39. She alleged the following physical and mental impairments: degenerative disc disease and issues with her lumbar and cervical spine, bone spurs, shoulder and neck pain, migraine headaches, left arm and elbow pain, knee pain and swelling, ankle swelling, numbness in her hands and fingers, asthma, obesity, and anxiety and depression.

In evaluating her application for benefits, the Administrative Law Judge (ALJ) and the district court painstakingly recounted Ms. Crampton's medical history and treatment for the relevant time period, 2011 to 2015, *see* R., Vol. 1 at 15-23, 913-19.[1] We incorporate those accounts herein.

Three doctors assessed Ms. Crampton's physical limitations: (1) Benjamin Roberts, D.O., an agency doctor who performed a consultative examination on August 30, 2014; (2) Karl K. Boatman, M.D., an agency doctor who reviewed Ms. Crampton's medical records and rendered an opinion on September 9, 2014, that she can perform light work; and (3) Brent W. Laughlin, M.D., a treating physician and primary care provider who completed a medical source statement during an office visit on October 8, 2015. Drs. Boatman and Laughlin also opined about Ms. Crampton's ability to work

---

[1] Some of the pages in the record contain two different page numbers. We refer to the smaller numbers on the bottom right.

given her physical limitations. We incorporate the district court's careful summaries of these opinions as well. *See id.* at 919-21.

The Commissioner denied Ms. Crampton's application for benefits, both initially and on reconsideration. Ms. Crampton then obtained a hearing before an ALJ, at which both she and a vocational expert testified. The ALJ issued a written decision in November 2015. He applied the familiar five-step sequential evaluation process used to assess social security claims, *see* 20 C.F.R. § 404.1520(a)(4), and found that Ms. Crampton was not disabled during the relevant time period.

At step one, the ALJ stated that Ms. Crampton has not engaged in substantial gainful activity since August 9, 2011, her alleged onset date. The ALJ then found the following severe impairments at step two: "Degenerative Disc Disease lumbar and cervical spine post 2011 lumbar fusion, migraine headaches, asthma, knee pain primarily left post surgery, left elbow and shoulder pain post-surgery, obesity, anxiety and depression." R., Vol. 1 at 12. At step three, the ALJ concluded these impairments are not presumptively disabling.

At step four, the ALJ found Ms. Crampton has the following residual functional capacity (RFC):

> [T]he claimant has the [RFC] to perform a full range of
> sedentary work . . . except as follows: Stooping and
> crouching can be done only occasionally. No overhead
> reaching left side. Handling and fingering limited to frequent.
> Avoid exposure to concentrated levels of fumes, dusts,
> gasses, odors, poor ventilation, or other respiratory irritants. .
> . .

3

> Due to mental impairments, claimant can understand, remember, and carryout simple or intermediate level instructions, and perform simple and some tasks of intermediate level difficulty under routine supervision, such that she is capable of doing simple or at most semi-skilled work. Claimant can relate to supervisors and coworkers on a superficial and work related basis, and can adapt to a work situation. Occasional incidental contact with the public is allowed.

*Id.* at 14-15. Applying these limitations, the ALJ determined that Ms. Crampton cannot return to her past relevant work as a highly skilled nurse.

Finally, at step five, the ALJ considered Ms. Crampton's age, education, work experience, and RFC and found she can perform unskilled, sedentary jobs existing in significant numbers in the national economy—namely, clerical mailer, assembler, and stuffer. Because Ms. Crampton can adjust to other work, the ALJ did not deem her to be disabled under the SSA.

The SSA's Appeals Council denied Ms. Crampton's request for review, making the ALJ's determination the final decision for purposes of judicial review. *See Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011). The district court affirmed the ALJ's decision.[2] Ms. Crampton filed this timely appeal.

## II. **DISCUSSION**

### A. *Standard of Review*

We review de novo the district court's ruling in a social security case and "independently determine whether the ALJ's decision is free from legal error and

---

[2] The parties agreed to proceed before a magistrate judge under 28 U.S.C. § 636(c).

4

supported by substantial evidence." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). "In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## B. *Preservation of Issues for Appeal*

Although Ms. Crampton was represented by counsel through the district court proceedings, she is now proceeding pro se. Because Ms. Crampton appears pro se, we afford her filings a liberal construction. *See Garza v. Davis*, 596 F.3d 1198, 1201 n.2 (10th Cir. 2010). Even so, we "cannot take on the responsibility of serving as [her] attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

Ms. Crampton's arguments on appeal are difficult to follow because she does not comply with Federal Rule of Appellate Procedure 28, which requires an appellant's opening brief to "contain . . . appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Fed. R. App. P. 28(a)(8)(A). She seems to make two separate arguments: (1) she was brought up "to smile [her] way through [her] pain" and not to complain, Aplt. Opening Br. at 3, so it was unfair for the ALJ to focus on her external appearance while ignoring her subjective complaints of disabling symptoms; and

5

(2) the ALJ did not give appropriate weight to the opinion of her treating physician, Dr. Laughlin.

Only the second argument is properly before us because the sole error that Ms. Crampton identified in district court was the ALJ's "fail[ure] to properly consider the opinion of the treating physician." R., Vol. 1 at 895. This court will "consider issues not raised or argued in the district court only in the most unusual circumstances, which may include issues regarding jurisdiction and sovereign immunity, instances where public interest is implicated, or where manifest injustice would result," *Bylin v. Billings*, 568 F.3d 1224, 1231 (10th Cir. 2009) (internal quotation marks omitted). Not one of those circumstances is present here, and Ms. Crampton has not offered a compelling reason to excuse her failure to raise the first issue before the district court. She makes only generalized statements about ineffective assistance of counsel.

## C. *Weight Assigned to Treating Physician's Opinion*

We turn to Ms. Crampton's argument that the ALJ failed to give the opinion of her treating physician, Dr. Laughlin, "proper weight." Aplt. Opening Br. at 4; *see also* Aplt. Reply Br. at 8 ("While the ALJ may have followed the five step sequential evaluation for assessing disability, I do not believe he gave the proper weight to . . . Dr. Laughlin's medical opinion."). She states generally that the ALJ should not have "discredited a [doctor] who treated [her] for over 10 years," Aplt. Opening Br. at 4, and

6

"given more weight to Dr. Boatman's findings after just one visit," Aplt. Reply Br. at

12.[3]  For the reasons that follow, this argument is not persuasive.

1. **Dr. Laughlin's Opinion**

We start by examining the substance of Dr. Laughlin's opinion.  On October 8,

2015, he completed a medical source statement regarding Ms. Crampton's ability to do

physical work-related activities.  *See* R., Vol. 1 at 873-76.  It is unclear whether he

understood the evaluation would be used for social security purposes, as his treatment

notes for that day reference the "FMLA" (the acronym for the Family and Medical

Leave Act) as the "[c]hief [c]omplaint," *id.* at 869.

Dr. Laughlin opined that Ms. Crampton did not have mental limitations, but his

opinion included the following physical limitations:

- Ms. Crampton can occasionally lift and/or carry less than ten pounds;

- she can stand and/or walk less than two hours in an eight-hour workday because standing more than ten minutes exacerbates her back pain;

- she must periodically alternate between sitting and standing to relieve pain or discomfort;

- she is limited in pushing and pulling due to problems with her left shoulder and left knee;

- although she can frequently feel and finger, she can only occasionally reach in all directions and handle due to shoulder bursitis and carpal tunnel syndrome;

- she can occasionally balance and stoop but can never climb, kneel, crouch, or crawl due to aggravation of the low back and knee pain;

---

[3] Ms. Crampton seems to be confusing Dr. Boatman (who reviewed her medical records) with Dr. Roberts (who conducted a consultative examination).

- her ability to maintain attention and concentration on work tasks throughout an eight-hour day is significantly compromised because she takes narcotic medications;

- she should limit exposure to hazards because her balance is affected by her back and knee and she could fall; and

- she should limit exposure to dust, humidity and wetness, fumes, odors, chemicals, and gases due to her asthma.

In formulating these limitations, Dr. Laughlin relied on Ms. Crampton's decreased range of motion, observed pain, and evidence of previous surgery.

## 2. **Background Law**

A treating physician's opinion usually receives more weight than other physicians' opinions "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence." 20 C.F.R. § 404.1527(c)(2). But this is not always the case.

In evaluating a treating physician's opinion, "the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser*, 638 F.3d at 1330. First, the ALJ must consider whether the opinion is entitled to controlling weight. A treating physician's opinion is entitled to controlling weight if it is both "well-supported by medically acceptable clinical or laboratory diagnostic techniques" and "[]consistent with other substantial evidence in the record." *Id.;* *accord* 20 C.F.R. § 404.1527(c)(2). An ALJ may discount the opinion if it is inconsistent with the weight of the evidence or if it assesses restrictions without explanation or support. *See, e.g.*, *Allman v. Colvin*, 813 F.3d 1326, 1332

8

(10th Cir. 2016) (inconsistent with record); *White v. Barnhart*, 287 F.3d 903, 907-08

(10th Cir. 2002) (no explanation for new restrictions).

Second, if the opinion is not entitled to controlling weight, "the ALJ must

make clear how much weight the opinion is being given (including whether it is

being rejected outright) and give good reasons, tied to the factors specified in

[20 C.F.R. §§ 404.1527 and 416.927] . . . for the weight assigned." *Krauser*,

638 F.3d at 1330. Those factors are:

> (1) the length of the treatment relationship and the frequency
> of examination; (2) the nature and extent of the treatment
> relationship, including the treatment provided and the kind of
> examination or testing performed; (3) the degree to which the
> physician's opinion is supported by relevant evidence;
> (4) consistency between the opinion and the record as a
> whole; (5) whether or not the physician is a specialist in the
> area upon which an opinion is rendered; and (6) other factors
> brought to the ALJ's attention which tend to support or
> contradict the opinion.

*Id.* at 1331 (internal quotation marks omitted). The ALJ need not explicitly discuss

all six factors if he otherwise provides good reasons for the weight given to the

treating source's opinion—*e.g.*, if he cites contrary, well-supported medical evidence

and shows the treating source "did not have the opportunity to see or did not give

weight to contrary evidence showing the [claimant's] greater functional capacity."

*Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

3. **Analysis**

In determining Ms. Crampton's RFC, the ALJ afforded "little weight" to

Dr. Laughlin's opinion, R., Vol. 1 at 21. The ALJ characterized Dr. Laughlin's opinion

as "inconsistent with the other evidence of record" and found that "the limitations provided by Dr. Laughlin are extreme and not supported by the overall evidence of record." *Id.* He provided numerous examples, including Ms. Crampton's improved condition at appointments with Tulsa Pain Consultants on May 18, 2015, and June 15, 2015; an internal inconsistency within Dr. Laughlin's own opinion; results in the normal range at the examination by Dr. Roberts and at earlier appointments with other doctors; an evaluation by Eric Edgar, M.D., at Neurology L.L.P.C., who concluded that Ms. Crampton was exaggerating her symptoms; and Ms. Crampton's own inconsistent statements.

For substantially the same reasons set forth in the district court's order, *see* R., Vol. 1 at 926-28, we agree that substantial evidence supports the ALJ's allocation of "light weight" to Dr. Laughlin's medical opinion and his reliance on Dr. Boatman's opinion. The ALJ discussed the totality of the medical record and gave "good reasons" why Dr. Laughlin's opinion was inconsistent with that record. *See id.* at 1330; *see also Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (acknowledging that "the ALJ is entitled to resolve any conflicts in the record"). He also carefully explained why he relied on Dr. Boatman's opinion "to the extent it stands for the proposition that claimant is capable of at least sedentary work" yet also "provided some additional limitation[s] based on more recent medical records," R., Vol. 1 at 24. Of the opinions rendered, Dr. Boatman's was the most comprehensive.

Dr. Boatman also reviewed Dr. Roberts' report, Dr. Laughlin's medical records, and the medical records of several specialists (including James L. Griffin, M.D., and

10

Antoine I. Jabbour, M.D., at Tulsa Bone and Joint and Andrew F. Revelis, M.D., Martin L. Martucci, M.D., and Brad Helton, PA-C, at Tulsa Pain Consultants).  Moreover, as the district court explained, Ms. Crampton did not present any evidence that she experienced a significant deterioration of symptoms after Dr. Boatman rendered his opinion.  *See id.* at 927-28.[4]

### III. CONCLUSION

The ALJ's decision to give the treating physician's opinion little weight was supported by substantial evidence.  We affirm the district court's order upholding the Commissioner's denial of benefits.

Entered for the Court


Scott M. Matheson, Jr.
Circuit Judge

---

[4] In challenging the ALJ's assessment of the medical opinions, Ms. Crampton disagrees with certain statements in the doctors' reports (e.g., that she had been on a cruise).  But the ALJ relied on the record presented to him, and Ms. Crampton had the opportunity to contest the reports in the administrative proceedings.  Moreover, even if we could accept the alleged discrepancies in her favor, "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way."  *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).  Ms. Crampton also provides details about what tasks and activities she is currently capable of performing, but we cannot consider new evidence on appeal.  *See Selman v. Califano*, 619 F.2d 881, 884-85 (10th Cir. 1980) ("We must decide the appeal on the record made below.").